**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 21, 2026

Sean J. Bellew, Esquire
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808

Scott B. Czerwonka, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

RE:  *Quentin Bichon v. Sharding Capital Management, LLC et al.*,
C.A. No. 2025-1310-LWW

Dear Counsel:

This letter opinion addresses the defendants' motion to dismiss in favor of arbitration.  Intervening events mooted the plaintiff's primary claims, leaving only a request for attorneys' fees under a contractual fee-shifting provision.  Because the operative contract reflects the parties' clear and unmistakable intent to delegate substantive arbitrability to an arbitrator, I decline to exercise jurisdiction over the remaining fee dispute.  The motion is granted.

## I.    BACKGROUND

The following facts are drawn from the Complaint for Breach of Contract (the "Complaint") and documents incorporated by reference.[1]

---

[1] Compl. for Breach of Contract (Dkt. 1) ("Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to

###### A.    The Sale

On September 3, 2025, plaintiff Quentin Bichon and defendants Sharding Capital Management, LLC and Sharding Capital I (together, "Sharding") entered into an Amended and Restated Purchase Agreement (the "Purchase Agreement").[2] Under the Purchase Agreement, Bichon agreed to purchase 22,115 shares of Securitize, Inc. Series A preferred stock from Sharding.[3]

Section 7 of the Purchase Agreement mandates that "[a]ll controversies arising [t]hereunder shall be resolved by binding arbitration" conducted by JAMS, where available.[4]  This provision includes a carveout for the parties to "seek injunctive relief in any other court of law of competent jurisdiction."[5]  Section 8.10 entitles the "prevailing party" in any legal proceeding to recover reasonable attorneys' fees.[6]

---

and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint."), *aff'd*, 58 A.3d 414 (Del. 2013).

[2] Compl. ¶ 7; *see* Compl. Ex. A ("Purchase Agreement").

[3] Compl. ¶ 8.  The aggregate purchase price was $331,725.  *Id.*

[4] Purchase Agreement § 7.

[5] *Id.*

[6] *Id.* § 8.10.

A dispute later arose over the transfer of the Securitize shares, which Bichon

asserts Sharding improperly canceled.[7]

### B.    This Litigation

Bichon filed this lawsuit on November 12, 2025, advancing claims for breach

of contract and breach of the implied covenant of good faith and fair dealing.[8]  He

sought specific performance of Sharding's obligations under the Purchase

Agreement and attorneys' fees.[9]

On December 4, 2025, Sharding moved to dismiss the Complaint under Court

of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction.[10]  Briefing

ensued.[11]  In his answering brief, Bichon explained that Sharding had "provided the

equitable relief that [he] was seeking" by transferring the disputed Securitize

shares.[12]  He acknowledged that this development "moot[ed] much of the

---

[7] Compl. ¶¶ 11-14.

[8] *Id.* ¶¶ 20-31.

[9] *Id.* at 8.

[10] Dkt. 4.

[11] Defs.' Opening Br. in Supp. of Mot. to Dismiss (Dkt. 5) ("Defs.' Opening Br."); Pl.'s Answering Br. in Resp. to Defs.' Mot. to Dismiss (Dkt. 10) ("Pl.'s Answering Br."); Defs.' Reply Br. in Supp. of Mot. to Dismiss (Dkt. 11) ("Defs.' Reply Br.").

[12] Pl.'s Answering Br. 1.

Complaint," leaving only his request for attorneys' fees.[13]  I took the fee request under advisement on the papers.[14]

## II.  ANALYSIS

Sharding moved to dismiss the Complaint under Court of Chancery Rule 12(b)(1) in favor of arbitration.[15]  Although the analysis proceeds under Rule 12(b)(1), the court is not necessarily divested of subject matter jurisdiction where an enforceable arbitration exists.[16]  Instead, the court abstains from exercising its jurisdiction to enforce the parties' contract.[17]  A motion to dismiss under

---

[13] *Id.*

[14] Dkt. 14.

[15] Ct. Ch. R. 12(b)(1).

[16] *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 340-44 (Del. Ch. 2023), *aff'd sub nom. CSC Upshot Ventures I, L.P. v. Gandhi-Kapoor*, 326 A.3d 369 (Del. 2024) (TABLE).

[17] *See id.* at 344 (stating that the court "decline[s] to exercise its subject matter jurisdiction when parties have agreed to an otherwise enforceable arbitration provision").

Rule 12(b)(1) will be granted where "the dispute is one that, on its face, falls within the arbitration clause of [a] contract."[18]

The parties agree that intervening events mooted the primary claims in the Complaint.[19] Only Bichon's request for attorneys' fees remains to be resolved.[20] Before assessing the merits of the fee request, I must first consider who has the authority to decide its arbitrability: this court, or an arbitrator. I conclude that the arbitration clause in the Purchase Agreement clearly and unmistakably delegates this gating question to the arbitrator.

### A. Substantive Arbitrability

"[T]he question of whether the parties agreed to arbitrate, commonly referred to as 'substantive arbitrability,' is generally one for the court" to decide.[21] "There is an exception, however, when there is 'clear and unmistakable evidence' that the

---

[18] *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (citation omitted).

[19] Pl.'s Answering Br. 1, 8 (explaining that Sharding's "agree[ment] to sell 22,115 shares of Series A preferred stock in Securitize . . . moots much of the Complaint," including the plaintiff's "claim for specific performance"); Defs.' Reply Br. 1 (stating that, due to "recent actions by a non-party to th[e] action, . . . the relief sought by the Complaint . . . has been mooted").

[20] Pl.'s Answering Br. 5-10 ("[T]he only remaining issue is [the] [p]laintiff's entitlement to attorneys' fees, costs and expenses under the express language of the Purchase Agreement.").

[21] *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998).

parties intended otherwise."[22] Such evidence exists where an arbitration provision "(1) generally refers all disputes to arbitration and (2) references a set of arbitral rules that empowers arbitrators to decide arbitrability."[23]

Although the prongs of the *Willie Gary* test are recited in this order, the mechanics of the test require the court to analyze the arbitral rules first.[24] The incorporation of rules empowering an arbitrator to decide jurisdiction creates a "heavy presumption that the parties intended to delegate substantive arbitrability."[25] Once that presumption is established, the court must determine whether the agreement's carveouts and exceptions, if any, are "so obviously broad and substantial" as to overcome it.[26]

Section 7 of the Purchase Agreement states, in relevant part, that "[a]ll controversies arising hereunder shall be resolved by binding arbitration in the City and County of San Francisco, California, conducted by JAMS if available, or by an

---

[22] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (citation omitted).

[23] *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *8 (Del. Ch. Nov. 13, 2009); *see Willie Gary*, 906 A.2d at 80.

[24] *See BuzzFeed Media Enters., Inc. v. Anderson*, 2024 WL 2187054, at *5 (Del. Ch. May 15, 2024).

[25] *Id.*

[26] *McLaughlin v. McCann*, 942 A.2d 616, 625 (Del. Ch. 2008).

alternate arbitration service of comparable reputation."[27]  It clarifies that "nothing in th[e] [Purchase] Agreement shall be deemed to limit the Parties' rights to seek injunctive relief in any other court of law of competent jurisdiction."[28]  Despite this carveout, Section 7 provides "clear and unmistakable evidence" of an intent to delegate for two reasons.[29]

First, the Purchase Agreement identifies a set of arbitral rules to be applied. By selecting JAMS, the parties "incorporate[d] the rules of an arbitral tribunal that empower an arbitrator to determine questions of substantive arbitrability."[30] Proceedings before JAMS are governed by the JAMS Comprehensive Arbitration Rules & Procedures, which grant the arbitrator "the authority to determine jurisdiction and arbitrability issues as a preliminary matter."[31]

---

[27] Purchase Agreement § 7.

[28] *Id.*

[29] *Willie Gary*, 906 A.2d at 78.

[30] *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 757-58 (Del. Ch. 2023).

[31] JAMS Comprehensive Arb. Rules & Procedures, Rule 11(b) (2021).  That the selection of JAMS is conditional upon its availability does not defeat the heavy presumption of delegation.  Rather, the primary invocation of a specific arbitral body and its jurisdictional rules is sufficient to demonstrate the parties' intent.  *Cf. Fairstead*, 288 A.3d at 757-58 (explaining that the primary invocation of JAMS and its comprehensive rules sufficiently empowered the arbitrator to determine substantive arbitrability).

Second, Section 7 "generally provides for arbitration of all disputes."[32] The sole exception is a request for "injunctive relief[,]" which a party may pursue in a "court of law of competent jurisdiction."[33] Delaware courts evaluate this delegation broadly in favor of arbitration; they do not require an arbitration clause to "refer all disputes to arbitration without exception."[34] This prong of the *Willie Gary* test is satisfied so long as any exclusions are not "so obviously broad and substantial as to overcome [the] heavy presumption" of delegation.[35]

Thus, both prongs of the *Willie Gary* test are met. Section 7 of the Purchase Agreement conveys clear and unmistakable evidence of the parties' intent to submit questions of substantive arbitrability to the arbitrator.

## B.    The Remaining Dispute

Because Bichon's substantive claims are moot, the sole remaining issue is his request for attorneys' fees under Section 8.10 of the Purchase Agreement.[36] Bichon invokes the cleanup doctrine, arguing that because he initially sought injunctive

---

[32] *Willie Gary*, 906 A.2d at 80.

[33] Purchase Agreement § 7.

[34] *McLaughlin*, 942 A.2d at 623-24.

[35] *Id.* at 625 ("In a case where there is any rational basis for doubt about that, the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her.").

[36] *See* Pl.'s Answering Br. 5-10; Purchase Agreement § 8.10.

relief, the court should retain jurisdiction to award fees.[37] As established above, however, the parties clearly and unmistakably delegated questions of substantive arbitrability to the arbitrator. I therefore decline to exercise jurisdiction over the fee dispute.[38] The arbitrator must resolve the threshold issue of arbitrability and, if arbitrable, whether fee-shifting is appropriate.

## III. CONCLUSION

Sharding's motion to dismiss is granted. Because the parties clearly and unmistakably delegated substantive arbitrability to the arbitrator, I decline to exercise subject matter jurisdiction over Bichon's fee request. The Complaint is dismissed without prejudice under Court of Chancery Rule 12(b)(1). IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[37] *See* Pl.'s Answering Br. 8-10.

[38] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.").